, case number 242532. Good afternoon. Good afternoon, your honors. May it please the court. Michelle Bars on behalf of Mr. Jesus Concepcion. I'd like to begin by discussing our argument that the district court did not adequately consider the need to avoid unwarranted sentencing disparities pursuant to section 3553A6. We're reviewing that for plan error, correct? No, I believe that, well, the government's initial position is that the issue is waived. Their fallback position is plan error. I believe under U.S. v. Cavera, 550 F3rd at 193, raising 3553A6 before the district court preserved the claim for appeal. What Cavera held was that a sentencing claim is preserved where the defendant invokes the relevant factor, which the defendant did so here in his written submissions at Appendix 63. And so the government's principal argument is that waiver is the intentional relinquishment. He intentionally relinquished his claim. Here, as I mentioned, Mr. Concepcion argued that his requested 10-year sentence would not generate disparities and urged the court to weigh the full set of 3553A considerations at A63. But even if this court found that plan error applied, the district court's incorrect statement that sentencing disparities were, quote, not that relevant here because his guidelines were life amounted to no consideration at all. The law requires courts to consider 3553A6 in every case regardless of the guidelines range and to provide a reasoned explanation for the sentence imposed. This court recently in Stewart described the district court's explanation as too sparse and amounted to essentially plan error. In Stewart, unlike here, the district court at least recognized the factor as relevant. Here, the record is even more sparse than Stewart. The district court did not think the factor was relevant, period. There is no viable argument that the factor was not particularly relevant. Each of the 71 comparable defendants set forth in the PSR had guidelines calling for life. Each of the defendants were placed in criminal history category 1 with a final offense level of 43 life. And their primary guideline was 2G1.3, just like for Mr. Concepcion. And none of them received a departure for substantial assistance. Therefore, it's unclear why Mr. Concepcion's similar life guidelines calculation somehow rendered a review of nationwide disparity irrelevant. Now, the error is impactful because the average length of imprisonment imposed for all 71 defendants who were similarly situated was 301 months, which is approximately five years less than Mr. Concepcion's 30-year sentence. The median length of imprisonment imposed was 264 months, about eight years less than Mr. Concepcion's 360-month sentence. Based on this data, which the government did not dispute below, Mr. Concepcion's 360-month sentence appears to be significantly higher than the national average for similar offenders. Now, the government relies on a case by this course, Ramos Acevedo, and its reliance on that case is misplaced. In Ramos Acevedo, the court noted that, unlike the Stewart case, the difference was only 15 months above the average sentence identified in the data. Here, the statistics showed that Mr. Concepcion's 30-year sentence was significantly above the national average. And in Stewart, this court reversed and remanded similarly for a five-year difference. The district court did not consider that disparity because it was under the mistaken belief there were no comparators when a defendant's guidelines are in place. If the court has no questions about that particular issue, I'd like to shift quickly to the supervised release condition. We argue that the district court plainly erred when it imposed a special condition of supervision prohibiting Mr. Concepcion's contact with his minor age family members without sufficient justification. Now, that is plain error. How old would they be when he emerged at the end of the sentence? Well, Your Honor, that's something that I footnoted in my opening brief. We famously don't read footnotes. Sometimes the footnotes have the most interesting arguments. That's a mistake. It is a mistake. But his daughter, when I wrote the brief, I believe, was three years old. He has stepchildren, however, who are having children. And grandchildren, I think. And grandchildren. And I don't think, and this is a point that I made in my reply brief, that we can adopt the government's wait-and-see argument. This is an important constitutional right, the right to familial association. And when Justice Sotomayor, then Judge Sotomayor, wrote for this court in Myers, which I think is controlling, is that when you have this kind of important constitutional right at stake, this right of familiar associations, you cannot burden that right without sufficient justification. The other question is, is it even ripe? Is it even ripe for consideration? In other words, he is not going to be released or have his sentence terminated in the absence of the parliament, I guess. But anytime soon. And so there's no realistic probability that this constitutional issue that you rightly identify is going to arise. So why should we even deal with it? Well, fortunately, we have an answer to that. Judge Sotomayor rejected the government's wait-and-see argument. They raised that argument in Myers, and it was rejected. And the court decided the issue and remanded back to the district court to make findings one way or the other, either to eliminate the condition or to provide sufficient justification for the condition. Now, there is some case law out there in other contexts that a little bit of tension has developed in the case law. Well, that's what I was about to look for. Go ahead. I can — one of them happens to be my case. It's Thomas Traficante. And that's a different condition of supervised release. And I think a lot of the conditions of supervised release that kind of fall under that wait-and-see category implicate less important constitutional concerns. Okay. Thank you. And you reserve one minute for rebuttal. Thank you. So we'll hear from the government. Good afternoon, Your Honor. Camille Fletcher for the United States. Also at counsel table is Mr. Michael Raymond. Your Honor, the defendant waived — going directly to the waiver argument. The defendant waived his argument that a below-guideline sentence would not create any sentencing disparities here. Those were his words. He said that explicitly, and he made a tactical choice in his efforts to seek a below-guideline sentence, which is one of something less than life, when he specifically said, a below-guideline sentence in this case will not create any sentencing disparities, either nationally or locally. Following his lead, Judge Preska noted, and when considering the 3553A factor, she stated the need to avoid unwarranted sentencing disparities is, in her view, not that relevant here. And, therefore, she considered the factor and gave it the amount of wait that she thought was appropriate, and, therefore, she made no error. Turning to the condition of supervised release, the judge, Judge Preska, did not err when she imposed that condition. It is evident from the record here that the need for that condition. The defendant spent years as a middle school teacher sexually abusing his 12-year-old student, not one, not two. It was five of them. He began his sexual abuse. Would you address the United States v. Myers, please? That's the decision by then-Judge Sotomayor that your friend on the other side relies on. Yes, Your Honor. That case is distinguishable than what we have here. There is no improper delegation to the probation office. Well, Your Honor, but my understanding is we're not focused on the improper delegation issue. We're focused on the following, which is that when we have what I think Myers called a fundamental liberty interest in connection with your relationship with your kids, then we need a greater level of reasoning from the district court before imposing a condition, a supervised release that would impair that fundamental interest. So could you address that? Yes, Your Honor. Well, district courts have broad discretion to impose conditions as they see fit, and here the defendant's challenge is an as-applied, essentially an as-applied challenge. Well, sure. But, Judge Preska, I think the argument, I'm sure Ms. Barth will correct me if I'm wrong, is that you need a more thorough justification when you impose this sort of special condition that arguably impairs a fundamental liberty interest, that is your relationship with your close relatives, particularly your minor children for those of us who've got kids. What is it that Judge Preska said by way of justifying this? It's an understanding, of course, that the conviction is for, you know, involves contact with other minors. But not, there's no, I think that there's nothing, no evidence that he ever abused his own kids or grandchildren and so on. That's correct, Your Honor. There is no evidence that he abused his own children or his family members. But what Judge Preska did say is the need for this special condition is because the offense of conviction involved five minor female victims and took place over electronic communications and that it was necessary for protection of the public, and that's at Appendix 177. But beyond that, Your Honor, in U.S. v. Betts, this Court found that when the reasoning is self-evident in the record, which it is here, the Court can uphold the condition. And understanding that, yes, there's no evidence that the defendant abused his own children, that's where the rightness argument comes in. He is not generally complaining about the condition. He's complaining about the condition as applied to his own children, who will not be minors by the time it comes into effect. At the end of his 30-year sentence, his now minor daughter will be well over the age of 18, as well as any grandchildren. So you're relying really on the rightness issue or a form of that? Yes, Your Honor. That's correct. Your Honor, the district court sentence was substantively reasonable. It was supported by the record. The district judge considered each of the 3553A factors and gave it the weight that she saw fit. And, therefore, the judgment should be affirmed. And unless the Court has other questions, the government will rest on its papers. Okay. Thank you very much. Your Honors, I just wanted to pull out the important parts of Myers that I think directly address your question. The Court noted, quote, taken to its logical extreme, we note that the government's weight and see argument would apply to any incarcerated defendant challenging a condition of supervised release on direct appeal, thereby disrupting Congress's intent in providing streamlined procedures for reviewing terms of supervised release. And that's at 123, note 5. Challenges to the, and that's the end of the quote, challenges to the lawfulness of the condition are properly. That's not the whole thing. First, it's a footnote. But that is not the whole thing. So this doesn't say it's ripe or not ripe. It says, in fact, it starts off with we express no opinion on whether to change circumstances by implicating constitutional concerns, permitting judicial scrutiny at a later date. So is there some precedent that tells us that this is ripe or not ripe? Well, yes, because I think in that footnote, they're addressing that wait and see argument. And Myers ultimately vacated that condition and sent it back to the district court. Had it adopted the government's position and found that it was unripe because the defendant was serving a long period of incarceration, then that footnote would not make any sense. If it's ripe and we remand, what is it we should direct the district court to do with respect to the condition of supervised release that bears upon his family members? Well, I believe, then, that the court would order the district court to vacate that condition as it applies to family members. Thank you so much. Thank you. Court was adjourned.